**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ATHALONZ, LLC, | § | |
| | § | Case No.: 2:23-cv-00193-JRG |
| *Plaintiff*, | § | |
| | § | **DEMAND FOR JURY TRIAL** |
| v. | § | |
| | § | |
| UNDER ARMOUR, INC., | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH DISCOVERY ORDER**

**TABLE OF CONTENTS**


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

III. ARGUMENT ........ 3

A. UA Must Immediately Produce Sales Information for the Accused Products. ........ 3

B. UA Must Produce Other Relevant Documents by a Date Certain. ........ 4

C. UA Must Produce Relevant Documents Related to the Athletes that Sponsor the Accused Products. ........ 5

D. UA Must Pay Athalonz's Fees and Expenses in Bringing This Motion ........ 7

IV. CONCLUSION ........ 7

# I. INTRODUCTION

Plaintiff Athalonz, LLC ("Athalonz") moves to compel Defendant Under Armour, Inc. ("UA") to comply with its obligations under Paragraph 3 of the Discovery Order and produce relevant documents it has so far withheld. Athalonz has repeatedly sought narrow, targeted discovery in this case, identifying specific categories of documents for UA to produce weeks in advance of the Court's October 19 deadline for additional disclosures. Despite Athalonz's best efforts, in the six weeks since the deadline for document production, UA has stonewalled discovery. UA has produced less than a hundred documents to date, most of which are simply public screenshots from its website, and has refused a date certain for any future productions.

Athalonz primarily seeks the Court's assistance in securing UA's compliance with the Court's orders. UA has not produced even the most basic sales information or other routine, relevant categories of documents. These documents should have been produced on October 19, but were not produced then, and still have not been produced now, six weeks later. Significantly, UA does not dispute that it must produce these documents—the dispute is when it will do so. Athalonz does not intend to burden the Court with unnecessary motions, but UA has made clear that it will unilaterally decide when it wants to produce documents, repeatedly refusing to provide a date certain for production other than noting it would be before the Court could rule on a motion to compel. That is not how discovery should work. Athalonz respectfully requests the Court order immediate production of sales information and the other agreed categories of documents within one week of the Court's order on this motion.

The only documents actually in dispute relate to UA's athletes that sponsor the Accused Products—Stephen Curry, Jordan Spieth, and Bryce Harper ("sponsored athletes"). Extensive public documentation from UA itself highlights the significant role each of the sponsored athletes has played in the marketing of the Accused Products, the importance of UA's contracts with these

athletes, and the athletes' role the design and development of the Accused Products, making them clearly relevant to this dispute. UA does not actually dispute that the athletes played a relevant role—but it has refused to produce its contracts with the sponsored athletes and other documents relating to their role in the design, development, and marketing of the Accused Products, all of which are relevant to many issues in the case. Athalonz seeks to compel these documents.

Finally, Athalonz also requests that the Court order UA to pay Athalonz's reasonable fees and expenses in bringing this motion under Rule 37(a)(5), even if UA ultimately produces the requested documents before the Court resolves this motion. UA's discovery delay tactics should not be rewarded—the Federal Rules are designed to prevent exactly what UA has done here.

## II. BACKGROUND

October 19, 2023 was the deadline to produce "all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action." Dkt. 34 ¶ 3(b); Dkt. 35 at 5 (setting deadline for Initial and Additional Disclosures at October 19). Two weeks before that date, Athalonz sent UA a letter identifying 18 targeted categories of documents that it expected in UA's initial production. On October 19, despite Athalonz's requests, UA produced only 98 documents, most of which were publicly available screenshots from its own website, and almost none of which were responsive to the categories Athalonz requested. After reviewing UA's deficient production, Athalonz sent another letter on October 26, explaining in detail why UA's production failed to satisfy its discovery obligations and highlighting particular documents or categories of documents within the 18 categories previously requested were missing. The parties exchanged over a dozen further letters and emails in the weeks that followed and met and conferred before Athalonz filed this motion. To date, UA has still not produced any additional documents nor provided a date certain for any further production, even where it has agreed to produce some document categories.

## III. ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court's Discovery Order (Dkt. 34) requires the parties to produce discovery without requests for production, and also makes clear that "[a] party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case[.]" *Id.* ¶ 10. "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *EVS Codec Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 2020 WL 6365514, at *1 (E.D. Tex. Apr. 9, 2020). Federal Rule of Civil Procedure 37(a)(5)(A) provides that the Court must award reasonable fees and expenses in bringing a motion to compel, both if the motion is granted and if the disclosure or requested discovery is provided after the motion was filed, absent mitigating circumstances not present here. *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, 2018 WL 4620634, at *2 (E.D. Tex. Apr. 27, 2018) (citations omitted).

In this case, most of the relief Athalonz seeks is simply compliance with the Court's October 19 order that UA has unilaterally ignored. Beyond that, Athalonz seeks discovery of narrow, relevant categories of information related to the sponsored athletes, and UA cannot meet its burden to resist this discovery. Athalonz also requests the Court order UA to pay Athalonz's reasonable fees and expenses in bringing this motion.

### A. UA Must Immediately Produce Sales Information for the Accused Products.

Athalonz first moves to compel immediate production of UA's sales information for the Accused Products. UA simply has no excuse for its failure to timely produce sales information—there is no dispute that this information is relevant or that it was not produced either by the October

19 deadline as required or in the six weeks after that deadline came and went, despite Athalonz's repeated protests. Indeed, Athalonz identified the specific, targeted sales information it sought on October 4, weeks before the Court's deadline: U.S. monthly sales information for each Accused Product, including information sufficient to show sales revenue, quantities, profitability, costs, and margins, beginning from the date the first Asserted Patent issued (June 2020). Sales information is particularly critical for Athalonz's damages theories and is necessary to Athalonz's ability to move discovery in this case forward.

UA has never disputed relevance and has never claimed burden; it just unilaterally decided it was not going to comply with the Court's October 19 deadline. UA's vague claims that it was "working to compile the sales information" (November 2), or "working diligently to gather and produce these additional documents, and will do so in a reasonable time frame" (November 7 and November 13) are insufficient. The Discovery Order explicitly prohibits these arguments from justifying non-production: "**No Excuses.** A party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case[.]" Dkt. 34 ¶ 10. Indeed, UA's true intention was clear on the parties' meet and confer (November 21)—that it could decide when to produce documents because it would do so before the Court could rule on a motion to compel. The Court should grant this motion and discourage such gamesmanship.

**B. UA Must Produce Other Relevant Documents by a Date Certain.**

In addition to sales information, Athalonz also moves to compel a date certain for UA to produce other categories of documents, none of which UA has disputed are relevant. Through the parties' extensive correspondence, UA has agreed to produce the following categories of documents but has continued to refuse to provide a date for production:

- Documents that identify any code name, internal name, project name, marketing name, or version number associated with the Accused Products.

- Documents that identify the date the Accused Products were first sold in the United States, and the date they were discontinued, if applicable.

- Internal specifications, business or marketing plans, promotional materials, development or testing documents for the Accused Products.

- Documents related to Athalonz, its products, or its patents.

UA cannot continue to delay production of these relevant documents. The Court's standing orders exist for a reason—to give the parties strict, early deadlines so the parties can focus their efforts on follow up discovery and disputes that really matter. *See also Weatherford*, 2018 WL 4620634, at *3 (discussing the importance of compliance with the Discovery and Docket Control Orders). Unfortunately, UA simply ignored the Court's October 19 order. Athalonz requests the Court order UA to produce these documents within one week of the Court's order.

**C. UA Must Produce Relevant Documents Related to the Athletes that Sponsor the Accused Products.**

Athalonz seeks targeted discovery related to UA's athletes that sponsor the Accused Products. In particular, NBA player Stephen Curry, professional golfer Jordan Spieth, and MLB player Bryce Harper collectively sponsor more than half of the Accused Products by number, and likely a far higher percentage by revenue. Extensive public documentation from UA highlights the role they played not only in the marketing and promotion of the Accused Products, but also in the design and development of the Accused Products, making the sponsored athletes relevant to this dispute. *See, e.g.*, Dkt. 19-9, -10, -11, -14, -15, -22. Given the importance of UA's relationship with the sponsored athletes, Athalonz identified two specific, targeted categories of discovery:

- Contracts, draft agreements, and communications related to each athlete's role as a sponsor of the Accused Products, including documents sufficient to show the amount and terms of payment from Under Armour to each athlete.

- Documents related to each athlete's involvement in the design, development, testing, marketing, advertising, promotion, and/or sale of the Accused Products.

Despite these narrow requests, UA has refused to produce the first category altogether, and has

unilaterally and inappropriately limited the scope of the second.

**Sponsored Athlete Contracts.** UA's contracts with the sponsored athletes are relevant. First, they relate to Athalonz's damages theories and the value of Athalonz's patented technology. These contracts will show the amount UA pays to the sponsored athletes to market and promote the Accused Products—information that goes to the value of Athalonz's patents embodied by those products—and may also include information relating to the sponsored athletes' role in the design and development of the Accused Products. Beyond that, Athalonz expects that the contracts will be used to rebut arguments from UA that the Accused Products are only successful because they are sponsored by the athletes, not because of Athalonz's patented technology. UA also cannot meet its burden to resist this discovery. *See EVS Codec*, 2020 WL 6365514, at *1. There is no burden on UA in producing these few standalone documents—UA even touts their existence in its public annual reports. *See* Ex. 1 (UA 2023 10K referencing Mr. Curry's "Under Armour, Inc. Athlete Product, Brand, Ambassador, and Endorsement Agreement"). The discovery is not broad or oppressive, and any concerns about confidentiality are satisfied by the Court's protective order.

**Design/Development Documents.** The dispute regarding design and development documents is narrow—UA claims it only has to produce documents related to the "accused features of the Accused Products, i.e. the shape and materials of the shoe sole" and can exclude documents relating to the athletes' role in designing and developing the Accused Products generally. That limitation is improper—the claims of the Asserted Patents unambiguously cover the entire accused UA shoes, and are not limited to only the shape and materials of the shoe sole. *See, e.g.*, Dkt. 23-5 (claim 5, "a shoe comprises"); 23-6 (claim 1); 23-7 (claim 1); 23-8 (claim 1); 23-14 (claim 1). Documents related to other features of the Accused Products are highly relevant to many issues in the case, including infringement and damages. *E.g.*, *ICON Health & Fitness,*

*Inc. v. Horizon Fitness, Inc.*, 2009 WL 10677745, at *3-5 (E.D. Tex. Mar. 16, 2009) (ordering production of all documents relating to the design of the accused products and to marketing "or other testimonials by [defendant's] representatives"). Similarly, documents related to these sponsored athletes' involvement in the marketing, promotion, and/or sale of the Accused Products generally are clearly relevant—UA's attempt to limit its production to only documents related to the shoe sole is inappropriate. Again, UA has identified no burden in producing any of these documents and has failed to meet its burden of showing the documents should not be produced.

**D. UA Must Pay Athalonz's Fees and Expenses in Bringing This Motion.**

Finally, Athalonz requests the Court order UA to pay its fees and expenses in bringing this motion. As set forth above, UA unilaterally and unapologetically ignored the Court's October 19 deadline to produce documents, despite agreeing that most of what Athalonz requested was relevant and repeating that it would produce documents "in a reasonable time frame." To be clear, blowing the deadline by six weeks and continuing to refuse to provide an indication of a date for production is not "reasonable," it is precisely the type of excuse the Discovery Order discourages. Dkt. 34 ¶ 10; *see Weatherford*, 2018 WL 4620634, at *2 (E.D. Tex. Apr. 27, 2018) (granting fees in bringing a motion to compel); *Mayes v. Simpson*, 2016 WL 8223976, at *3 (E.D. Tex. Jan. 12, 2016) (same, noting "award of expenses is mandatory in circumstances such as these."). UA's conduct is a clear delay tactic—it admitted so much during the parties' meet and confer when it refused to provide a date certain for production other than noting it would be before the Court could rule on a motion to compel. Even if UA does produce these agreed documents before the Court rules, Rule 37 mandates awarding fees, not only "if the motion is granted" but also "if the disclosure or requested discovery is provided after the motion was filed."

**IV. CONCLUSION**

For the reasons stated above, Athalonz respectfully requests that the Court grant its motion.

Dated: November 29, 2023

Respectfully submitted,

*/s/ Melissa R. Smith*

Taylor N. Mauze (TX Bar No. 24102161)
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
901 S. Mopac Expressway
Bldg. 1, Ste. 300
Austin, TX 78756
Telephone: (650) 623-1401
Facsimile: (650) 650-3501

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Christine E. Lehman (pro hac vice)
clehman@reichmanjorgensen.com
Connor S. Houghton (pro hac vice)
choughton@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Michael Matulewicz-Crowley
mmatulewicz-crowley@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
(332) 208-7170

***Attorneys for Plaintiff***
***Athalonz, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service, including counsel for Under Armour, are being served on November 29, 2023 with a copy of this document via the Court's CM/ECF system.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

On November 21, 2023, lead and local counsel for Athalonz spoke with lead and local counsel for Under Armour regarding the relief requested herein. Counsel for Under Armour refused to provide a date certain for production of any documents, and indicated it opposed the relief requested.

*/s/ Melissa R. Smith*
Melissa R. Smith