**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ATHALONZ LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:23-CV-00193-JRG |
| | § | |
| UNDER ARMOUR, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Under Armour, Inc.'s ("Under Armour") Motion to Transfer this case to the District of Maryland pursuant to 28 U.S.C. § 1404 ("Motion to Transfer"). (Dkt. No. 17.) Having considered the Motion to Transfer, the subsequent briefing, and for the reasons stated herein, the Court is of the opinion that the Motion to Transfer should be and hereby is **DENIED**.

## I.    BACKGROUND

This is a case for patent infringement brought by Athalonz LLC ("Athalonz") against Under Armour. Athalonz is a company formed under the laws of the State of Texas with a principal place of business in Mesa, Arizona. (Dkt. No. 19 at 1.) Athalonz has three employees, and it intends to call all three as witnesses at trial. (Dkt. No. 19-1 at 4.) Two of the three employees live in Mesa, Arizona. One lives in San Antonio, Texas. (*Id.*) Under Armour is a corporation organized and existing under the laws of the State of Maryland with its headquarters also in Maryland. (Dkt. No. 17 at 1); (Dkt. No. 19 at 1.) Under Armour has a nationwide distribution network, including a store in Allen, TX, which is in this District. (Dkt. No. 19 at 3.)

The Accused Products in this case are various athletic shoes, including golf, basketball, and baseball shoes, sold by Under Armour. Some of the accused products were apparently

designed with the aid of professional sports figures, including professional golfer Jordan Spieth and professional basketball player Stephen Curry. (Dkt. No. 17 at 6.) Athalonz also manufactures its own products that allegedly practice the patented inventions.

## II.   LEGAL STANDARD

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include: (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id*. The Fifth Circuit has held that the factors recited in *Volkswagen I* and *Volkswagen II* are "not necessarily exhaustive or exclusive" and "none . . . can be said to be of dispositive weight." *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*") (internal citations omitted).

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District. *Id.* This elevated burden reflects the weight owed to the plaintiff's choice of forum. *In re Vistaprint Ltd*., 628 F.3d 1342, 1344 (Fed. Cir. 2010).

## III.   DISCUSSION

The threshold inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. The parties do not dispute that this case could have been brought in either this District or the District

2

of Maryland. Accordingly, the Court finds that this threshold question is satisfied and turns next to the question of convenience.

A.     **Private Interest Factors**

1.     **The Relative Ease of Access to Sources Proof**

Under Armour argues that the "[a]ccess to sources of proof favors transfer" because "[i]n patent infringement cases, 'the bulk of relevant evidence usually comes from the accused infringer.'" (Dkt. No. 17 at 6) (citing *Viking Techs., LLC v. Assurant, Inc.*, 2021 WL 3520756, at *4 (E.D. Tex. June 21, 2021)). Specifically, Under Armour argues that "[a]ll of [the] documents and sources of proof regarding the research, design, development, sales and marketing of the Accused Products, prior art products, and alleged knowledge of the asserted patents are controlled at Under Armor headquarters in Baltimore, Maryland." (*Id.*) Under Armour admits that such documents exist in digital form and are stored electronically on its servers located in Maryland and on other third-party servers,[1] but it nonetheless contends that this factor "[h]eavily" favors transfer. (Dkt. No. 30 at 1, n.1); (Dkt. No. 17 at 6.)

Athalonz argues that this factor weighs against transfer. First, Athalonz contends that "[t]he sources of proof in this case will be focused on physical products—both Under Armour's shoes . . . and Athalonz's shoes." (Dkt. No. 19 at 2.) Athalonz maintains its own products at its headquarters in Arizona, and it argues that transportation of these products to Maryland will be more burdensome than transportation to the Eastern District of Texas. (*Id.* at 3.) Athalonz also argues that Under Armour maintains a nationwide distribution network from which the Under Armour accused products may be accessed, including a store in this District in Allen, Texas,[2] as

---

[1] Under Armour does not identify where such third-party servers are located.
[2] Under Armour contests that all of the accused products may be accessed from its store in Allen, Texas, because some of the accused products are discontinued and no longer sold in stores. However, it does not dispute that the non-discontinued products may be accessed from this store.

well as two major distribution centers in Tennessee and California, both of which are closer to this District than the District of Maryland. (*Id.*)

Second, Athalonz argues that its corporate formation documents are in Texas, and its own documentary evidence, including its sales and financial data, is located in Arizona. (*Id.* at 4.) Athalonz contends that such documents, to the extent that they are electronically available, are equally available in both districts, and to the extent that they are tangible, such documents are more easily accessed in this District.

Finally, Athalonz argues that some documentary evidence, at least as to the accused basketball and golf shoes, may be located at Under Armour offices in Portland, Oregon, or with Under Armour's celebrity ambassadors, Jordan Spieth and Stephen Curry in Texas and California. (*Id.* at 6, 19.)

The Court agrees with Under Armour that the bulk of relevant documentary evidence is likely stored at Under Armour's headquarters in Baltimore, Maryland. However, Under Armour admits that such documents are electronically stored in digital form. Such electronically stored documents "bear[] less strongly on the transfer analysis." *In re Tiktok*, 85 F.4th 352, 358 (5th Cir. 2023).

The Court disagrees with Under Armour that there is "**no** evidence in this District." (*See* Dkt. No. 30 at 2.) Under Armour has a store located in this District that sells accused products, which may be physical sources of proof of infringement in this case. While Under Armour alleges that the store no longer sells accused products that are discontinued, it does not say the same for

its currently available products. There is an Under Armour store that actively stores some accused products. Such products are within this District and may be easily accessed from this District.[3]

Further, Athalonz's products are located in Mesa, Arizona, which is closer to this District than to the District of Maryland. It would be more convenient to transport these products to this District than the District of Maryland, a fact that Under Armour does not refute.

The Court disagrees with Athalonz that the presence of the store in Allen, TX, and the location of Athalonz's products in Arizona is sufficient to make this factor weigh against transfer.[4] While there is evidence located in both Districts, in terms of *relative* access to sources of proof, the greater amount of evidence in Maryland tips the balance slightly in favor of transfer.

### 2.      Availability of Compulsory Process to Secure the Attendance of Witnesses

Under Armour argues that this factor weighs in favor of transfer. Specifically, two potential witnesses identified by Athalonz in its Complaint, Kevin Culley and Don Gibaldo, are no longer employed by Under Armour and may require a subpoena to testify. (Dkt. No. 17. at 8.) Under Armour "believe[s]" both reside in Maryland. (*Id.*) Under Armour also alleges that one of the asserted patents "may" be the property of the Baltimore Orioles since one of the inventors, Michael "Rick" Adair, worked for the Baltimore Orioles at the time of the invention. (*Id.* at 5.) Under Armour intends to seek documents and testimony from the Baltimore Orioles organization, and members of its staff, "to determine whether the assignment of the asserted patents to Athalonz was

---

[3] This is not to say that the sale of products within the District or the mere presence of products in the District is relevant under this factor. Rather, this factor looks at ease of *access* to sources of proof. Some accused products may be accessed from this District because they are stocked in the District.

[4] The Court notes that the burden to transport athletic shoes, both for Athalonz and for Under Armour, is much less than if the accused products had been refrigerators or bulldozers.

proper." (*Id.* at 9.) According to Under Armour, the District of Maryland has subpoena power over the two former employees and the Baltimore Orioles. This District does not.[5]

Athalonz argues that this factor weighs against transfer because "[t]here are important witnesses for whom compulsory process is available in this District and not Maryland, and Under Armour has not shown relevant unwilling witnesses available in Maryland but not in Texas." (Dkt. No. 19 at 7.) First, Athalonz alleges that Jordan Spieth will be an important witness in this case. According to Athalonz, Mr. Spieth's testimony, "will inform nonobviousness and damages arguments and calculations."[6] (*Id.*) Athalonz intends to issue a subpoena to compel Mr. Spieth to testify at trial pursuant to Federal Rule of Civil Procedure 45. (*Id.* at 8.) Such compulsory process would not be available in Maryland. Additionally, Athalonz alleges on information and belief, that "Mr. Spieth conducts his deals with Under Armour through his company, Spieth Enterprises Inc., and Rule 45 provides the basis for seeking testimony from officers of Spieth Enterprises Inc." (*Id.*) Athalonz also argues that two of its former employees, Jim Quinn and Dale Blackburn, will require a subpoena to testify. Mr. Quinn and Mr. Blackburn are former sales representatives of Athalonz who allegedly "have relevant knowledge about at least secondary considerations and damages, and would be available to testify under subpoena in Texas but not in Maryland." (Dkt. No. 19 at 8.)

Athalonz also argues that Under Armour has not adequately shown the necessity of compulsory process in Maryland. Specifically, Athalonz argues that Under Armour fails to show that Under Armour's former employees, Mr. Culley and Mr. Gibaldo, will be unwilling witnesses or that they actually reside in Maryland. Under Armour merely states that it "believes" that the

---

[5] Where former Under Armour employees are "believed" to live and whether it "appears" that a patent "may" be owned (in whole or in part) by the Baltimore Orioles is far from the kind of definite and fixed evidence needed to weigh this factor properly.

[6] Under Armour argues that any shoes designed by Mr. Spieth are irrelevant to this Motion because Mr. Spieth's shoes were not accused until after this Motion was filed. (Dkt. No. 30 at 3.) Athalonz responds that its original Complaint accused Under Armour golf shoes, which includes the shoes designed by Mr. Spieth. (Dkt. No. 33.) The Court agrees with Athalonz.

District of Maryland has absolute subpoena power over these two individuals, pointing to "last known" addresses rather than known current addresses. (Dkt. No. 19 at 9.) In fact, Athalonz provides evidence that at least one of the former employees, Mr. Gibaldo, currently resides in New Hampshire, outside of the subpoena power of both Districts. (Dkt. No. 19 at 9); (Dkt. No. 19-18.) Finally, Athalonz argues that any information sought from the Baltimore Orioles is irrelevant as it could only relate to standing arguments, which Under Armour has not specifically pled.[7] (*Id.* at 9-10.)

The Court is not persuaded that Mr. Gibaldo resides in Maryland or is subject to the subpoena power of the District of Maryland. Athalonz provides evidence that Mr. Gibaldo currently lives in New Hampshire. (Dkt. No. 19 at 9.) Under Armour does not rebut this evidence. Instead, it merely states that it believes Mr. Gibaldo resides in Maryland based on his last known address. Given the unrebutted evidence, the Court finds that Mr. Gibaldo is not subject to the subpoena power of either District, and thus he is not relevant to the Court's analysis under this factor.

Setting aside Mr. Gibaldo, Under Armour's case for transfer under this factor boils down to its assertion that the District of Maryland has subpoena power over at least one former Under Armour employee and the Baltimore Orioles and that "[n]o non-parties are located in the Eastern District of Texas." However, the inquiry is not whether any non-parties are located in the Eastern District of Texas, but whether the Court has the power to compel non-parties to attend deposition and trial. *See Volkswagen II*, 545 F.3d at 316.

A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v.*

---

[7] Under Armour argues that it has in fact pled a lack of standing by denying the allegations in the Complaint that Athalonz owns the patents.

*Salesforce.com, Inc.*, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014) (explaining 2013 amendments to Rule 45). First, a district court has the power to compel a witness to attend trial if that witness lives or works within 100 miles of the courthouse. Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has the power to compel attendance at trial for all residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and non-party residents can be similarly compelled as long as their attendance would not result in "substantial expense." Fed. R. Civ. P. 45(c)(1)(B)(i)–(ii). Third, a district court has nationwide subpoena power to compel a non-party witness's attendance at a deposition within 100 miles of where the witness lives or works. Fed. R. Civ. P. 45(a)(2), 45(c)(1). This means that where there is a deposition site both within the Eastern District of Texas and within 100 miles of the non-party's location, this Court will have subpoena power to compel a witness to attend a deposition.

This District has subpoena power over more witnesses than the District of Maryland, which weighs against transfer. At least two of Athalonz's witnesses, Mr. Spieth and Mr. Blackburn, reside within 100 miles of the Eastern District of Texas, meaning that the Court can compel both of these witnesses to attend depositions within the Eastern District of Texas.[8] The Court also has the power to compel Mr. Spieth, Mr. Blackburn, Mr. Quinn, and the officers of Spieth Enterprises Inc. to attend trial under Rule 45(c)(1)(B)(ii). In contrast, the District of Maryland has the power to subpoena only one witness, Mr. Culley, and the officers and employees of one organization, the Baltimore Orioles.

---

[8] The Court takes judicial notice of the fact that Jordan Spieth currently resides in Dallas, Texas, which is well within 100 miles of the border of the Eastern District of Texas. (http://www.jordanspiethgolf.com/article/tom-kim-joins-spieth-family-christmas-dinner-before-sentry). Athalonz alleges that Dale Blackburn resides in Spring, Texas, citing evidence that Under Armour does not refute. (Dkt. No. 19 at 8.) Spring, Texas is also within 100 miles from the border of the Eastern District of Texas.

Additionally, this District has subpoena power over the only individual identified as a key witness by either party: Jordan Spieth. Such is a consideration that the Court finds to be appropriate under this factor. This factor concerns the availability of compulsory process to the parties.[9] This factor affects the course of discovery and the scope of trial itself by determining what unwilling witnesses the parties may call to testify. The inability to call an important witness may materially affect a trial. This is why the Federal Circuit has explained that under this factor, "[a] district court should assess the relevance and materiality of the information the witness may provide." *See Genentech*, 566 F.3d at 1343. If the importance of the witness cannot be considered, then raw counting decides which direction and how far this factor leans. Such is too rigid an analysis to account for the specific facts of a case where the parties have affirmatively identified some witnesses as more important than others—as in this case.

This District has subpoena power over a key witness for Athalonz and its case: Jordan Spieth. Almost all identified individual witnesses, both willing and unwilling, are either current or former employees of Athalonz or Under Armour. Mr. Spieth, however, is a third party and a celebrity. While the other non-party witnesses may have some degree of overlapping testimony with the current Athalonz and Under Armour employees,[10] Mr. Spieth is in a class of his own. Athalonz alleges that Mr. Spieth and the officers of Spieth Enterprises, Inc. have knowledge of the

---

[9] The interest factors are intended to determine whether transfer is "[f]or the convenience of the parties and witnesses." 28 U.S.C. § 1404(a). The Federal Circuit has recognized that courts are to consider the conveniences of the *witnesses* when weighing certain factors. For example, it is well-established that courts must consider the convenience of the witnesses when weighing the second and third factors, i.e., the "witness factors." *See, e.g., In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009). However, 28 U.S.C. § 1404(a) instructs that Courts are also to consider the convenience of the *parties*. The second factor, the "availability of compulsory process to secure the attendance of witnesses" implicates an inquiry as to the convenience of the *parties* in addition to the convenience of the witnesses because it concerns whether the *parties* may use compulsory process to secure the attendance of witnesses.

[10] For example, Under Armour disagrees as to the importance of Mr. Blackburn and Mr. Quinn because it says there has been no showing that they "possess any unique knowledge that a current employee does not possess." (Dkt. No. 30 at 4.)

accused products, which may inform nonobviousness arguments and damages calculations by virtue of Mr. Spieth's alleged aid in designing the accused products. Mr. Spieth's own website says, "Jordan [Spieth] worked with Under Armour's research team to construct a shoe that not only meets the needs of every golfer, but yields them an opportunity to boost their game to the next level." (Dkt. No. 19-14). Mr. Spieth allegedly helped Under Armour design the accused products, and he has advertised the shoes by wearing them at tournaments, putting them in the public's eye and promoting them before hundreds of thousands of people, including at the AT&T Byron Nelson golf tournament in McKinney, Texas, which is in this District. (Dkt. No. 19 at 9); (Dkt. No. 19-15.) Mr. Spieth's testimony would be relevant and highly material to Athalonz's case. *See Genentech*, 566 F.3d at 1343.

Compulsory process is not available to secure the testimony of Mr. Spieth in the District of Maryland, but it is available in this District. In other words, if this case is transferred to the District of Maryland, then Athalonz will have no means to compel his participation in this trial either live or by deposition.[11]

The Court recognizes that Mr. Spieth lives in the State of Texas but is over 100 miles from this Courthouse, meaning that the Court may compel his attendance at trial, but such would be subject to a motion to quash. However, this Court undoubtedly has the power to compel Mr. Spieth to attend a deposition at a location that is both in the Eastern District of Texas and within 100 miles

---

[11] The practical realities of Jordan Spieth's participation in this case warrants further examination due to his celebrity status. There are added demands on celebrities regarding both travel and public appearances. Whether it is personal security protection, crowd control, private as opposed to commercial travel, etc., there are realities that relate to trial participation by celebrities that do not impact the rest of us. For example, it can be fairly said that air travel would prove burdensome for any witness, but air travel for a celebrity exposes them to more public areas and may require extra security expenses that ordinary witnesses would not have to take. Mr. Spieth lives in Dallas, which is only a few miles from this District and an easy drive of a few hours by interstate highway to the Courthouse in Marshall, Texas. Conversely, travel to Maryland from Dallas will require air travel (with movement through two major airports)—that is, if Mr. Spieth participates in Maryland at all, which he is not likely to do so. Considering both time and the special circumstances surrounding his celebrity status, this District would be more convenient for Mr. Spieth.

from his residence in Dallas, Texas. Fed. R. Civ. P. 45. The Court's power to compel attendance at deposition should not be discounted. It is well-understood that witnesses who would otherwise find travel to be burdensome, or who otherwise would not participate in trial, commonly testify at trial by recorded video deposition. Even if this Court's power to compel Mr. Spieth's physical attendance at trial is subject to a motion to quash, this District offers a means for Athalonz to secure Mr. Spieth's participation in trial by playing portions of his video deposition. In contrast, transfer to the District of Maryland would eliminate all means for Athalonz to compel Mr. Spieth's participation in this case. If this case is transferred, Athalonz can only hope that Mr. Spieth will willingly testify against his sponsor or that Under Armour will use its commercial relationship with Mr. Spieth to have him testify willingly—neither of which may happen given Under Armour's stance that currently it does not want Mr. Spieth to testify at trial. (*See* Dkt. No. 30 at 2-3.) These realities reinforce the principle articulated by the Fifth Circuit that the public and private interest factors are not rigid and that the balancing analysis must be applied with sensitivity to the specific circumstances of each case. *See Volkswagen II*, 545 F.3d at 315. Mr. Spieth's testimony can be compelled in this District. If this case is transferred, then Under Armour will have effectively shaped the course of trial and discovery by eliminating Athalonz's ability to call a key witness for its case. Again, a transfer in this case would preclude Athalonz from presenting a material witness. This opens the door to a serious level of substantive prejudice on the merits—which goes well beyond ordinary notions of convenience.

Under Armour does not identify any witness on the same level of importance for its case or give any similarly compelling reason for why this case should be transferred to the District of Maryland to make use of available compulsory process there. While, Under Armour is not required by law to identify "key witnesses," "[a] district court should assess the relevance and materiality

11

of the information the witness may provide." *See Genentech*, 566 F.3d at 1343. Athalonz identified

a key witness to show the critical nature of this case proceeding in this District due to the

availability of compulsory process here.[12] Under Armour does not balance the scales.[13] Under

Armour's dismissal of the materiality and relevance of Jordan Spieth's potential testimony is

unconvincing given the evidence from Mr. Spieth's own website where it states he was involved

in designing the accused products. (Dkt. No. 19-14). Under Armour's only specifically identified

witness, Mr. Culley, is identified because ***Athalonz*** included him in the Complaint as a potential

witness. Under Armour does not give any indication that it intends to use compulsory process to

secure the attendance of Mr. Culley at trial or that Mr. Culley is important to Under Armour's case

in any way. Under Armour also argues that it intends to compel testimony from the Baltimore

Orioles, but it does not identify any specific individuals that it intends to compel for deposition

and trial.[14] Further, the District of Maryland's subpoena power over the unidentified employees of

---

[12] This fact distinguishes this case from *Genentech*. In *Genentech*, the district court erred in finding that movants had "failed to identify any 'key witnesses' within the transferee venue." *Genentech*, 566 F.3d at 1343. The Federal Circuit explained that "[r]equiring a defendant to show that a potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis is unnecessary." *Id.* As such, the Federal Circuit found it "was not necessary for the district court to evaluate the significance of the identified witnesses' testimony." *Id.* Here, unlike *Genentech* it is necessary for the Court to evaluate the significance of the identified witnesses' testimony, specifically because Athalonz has made a claim that there is in fact a "key witness" in this District. While neither party is required to identify a key witness, they are not prohibited from doing so, and when such an identification is presented, it would be unreasonable for the Court to ignore such realities and instead reduce this factor to raw counting of witnesses.

[13] Again, the Court recognizes that Under Armour is not required by law to identify "key witnesses" for this factor. *See Genentech* 566 F.3d at 1344. However, Under Armour is required to show that the transferee district is clearly more convenient. Athalonz, despite not bearing the burden on this motion, has come forth with a compelling reason why this District is clearly more convenient under this factor: the existence of "key witnesses" in this District. Under Armour is not required by law to come forward with its own "key witnesses" in the District of Maryland to rebut this. For example, Under Armour could tip the scales in its favor by showing that there are more witnesses in the transferee venue such that it would outweigh the singular "key witness" in this District, or it could attempt to undermine the importance of the witness (as Under Armour attempts to do here). Regardless, the Court does not purport to hold Under Armour to a "higher standard than required by the law" in pointing out that Under Armour does not identify its own key witnesses. *Id.* Rather, this Court notes that Athalonz has gone above what was required by identifying a key witness in this District, and Under Armour does not balance the scales against Athalonz's well-taken arguments and evidence.

[14] The Court recognizes that a failure to identify specific individuals is "no basis to discount" the identification of a corporate entity under this factor. *See In re HP Inc.*, 826 F. App'x 899 (Fed. Cir. 2020). However, the Court is unable to determine the level of importance of the Baltimore Orioles and its officers to Under Armour's case without more. Athalonz, for example, identifies Jordan Spieth as an "important third-party witness[]" from whom it intends to illicit

---

the Baltimore Orioles is offset by this District's subpoena power over the unidentified employees of Spieth Enterprises, Inc.

This District has subpoena power over more witnesses and over more important witnesses than does the District of Maryland. Accordingly, the "availability of compulsory process" for the parties to secure the attendance of witnesses weighs against transfer.

### 3.     Cost of Attendance for Willing Witnesses

Under Armour argues that this factor weighs in favor of transfer because seven willing witnesses reside in Maryland: David Stakel, Joshua Rattet, Craig Foster, Shawn McManus, Spencer Hawkins, Teresa Oles, and Katie Fink. Under Armour argues that all other witnesses will be required to travel regardless since no witnesses reside in the Eastern District of Texas.

Athalonz argues that this factor is neutral. Athalonz does not allege that any witnesses reside in the Eastern District of Texas. However, it identifies several witnesses in this case who would find it more convenient to travel to Texas rather than to Maryland. Specifically, Timothy Markison and Jeremiah Johnston, officers for Athalonz, both reside in Mesa, Arizona. Bill Lichte, a managing member of Athalonz is located in San Antonio, Texas. Rick Adair, one of the named inventors of the patents-in-suit, is located in South Carolina. Athalonz also points out that at least one of Under Armour's potential witnesses, Tom Luedecke, is located in Portland, Oregon, which is closer to the Eastern District of Texas than to Maryland. Finally, Athalonz argues that professional basketball player Stephen Curry, like Mr. Spieth, helped design some of the accused products in this case. Mr. Curry is outside of the subpoena power of both districts, but Athalonz

---

specific trial testimony. Under Armour gives no such indication with respect to the Baltimore Orioles or any other witness. (*See* Dkt. No. 19 at 10.) Instead, its arguments are littered with speculative language about what arguments it "may" pursue at a later date based on uncertain factual contentions.

argues that if he should prove to be a willing witness, his residence in California is closer to the Eastern District of Texas than it is to Maryland.[15]

The Court finds that this factor weighs in favor of transfer, but not as significantly as Under Armour would have the Court find. Seven potential witnesses live in the District of Maryland. No witnesses live in this District. On these facts, the scale necessarily tips towards transfer. *See Genentech*, 566 F.3d at 1345. However, for nearly all of the witnesses other than those that live in Maryland, transfer will increase travel inconvenience, and by a significant amount.[16] Transfer will add 1,200 miles to Bill Lichte's travel, quadrupling the distance.[17] Timothy Markison and Jeremiah Johnston will have to travel an extra 1000 miles to attend trial at the transferee venue, effectively doubling their travel distance.[18] Finally, transferring this case would cause some extra travel for Tom Luedecke, though not by a significant amount.[19]

Under Armour would have this Court completely disregard the inconvenience to Athalonz's witnesses, Timothy Markison, Jeremiah Johnston, and Bill Lichte, because they will "need to travel a significant distance regardless of whether the case proceeds in this District or in the District of Maryland." (*See* Dkt. No. 17 at 11) (citing *Genentech*, 566 F.3d at 1344.) The Court disagrees that such significant discounting is warranted as to these potential witnesses.

---

[15] The Court is not convinced that Stephen Curry is likely to be a willing witness in this case. "[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *See In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021. The Court finds it to be highly unlikely that Stephen Curry, a major partner and sponsor of Under Armour, is likely to willingly offer testimony that could impugn his business partner. Athalonz offers no credible evidence that Mr. Curry will testify willingly. Thus, the Court does not consider Mr. Curry under this factor.

[16] Rick Adair is in South Carolina, which is roughly equidistant from both districts.

[17] San Antonio, Texas to Baltimore, Maryland is roughly 1,600 miles, while the distance between San Antonio and Marshall is less than 400 miles. (Dkt. No. 17-16.)

[18] Baltimore, Maryland, and Mesa, Arizona, are both roughly 1000 miles from Marshall, Texas. (Dkt. No. 17-13 at 2-3.) Mesa, Arizona is roughly 2000 miles from Baltimore, Maryland. (Dkt. No. 17-14 at 2-4.)

[19] Portland, Oregon to Baltimore, Maryland is roughly 2,800 miles, while Portland to Marshall is roughly 2,150 miles.

Since inconvenience for witnesses increases with distance from home, the Fifth Circuit established the "100-mile" guideline. *Volkswagen II*, 545 F.3d at 317. Under this tenet, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id*.

The Federal Circuit has cautioned against rigid application of the "100-mile" rule, especially where witnesses "will be traveling a great distance no matter which venue the case is tried in." *Genentech*, 566 F.3d at 1344. For example, the Federal Circuit has given little to no weight to the travel inconvenience of witnesses traveling from overseas, as such "will be traveling a great distance no matter which venue the case is tried in." *See e.g., id*. 1345. On the other hand, the Federal Circuit has considered the fact that "at least some . . . employees and managers would have to travel approximately half the distance to attend trial" to weigh in favor of the closer venue. *See id*. at 1344, 1345. Nonetheless, even in cases where trial in one District would cut travel in half for some witnesses, the Federal Circuit has cautioned not to give "too much significance" to travel inconvenience when the witnesses will be traveling a significant distance regardless. *See In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020) (finding that a district court gave "too much significance" to witnesses traveling from New York to either Texas or California because "[t]hese witnesses will only be slightly more inconvenienced by having to travel to California than to Texas." (internal quotations omitted)).

Under Armour would have this Court discount the travel for all of Athalonz's witnesses on the basis that those witnesses will need to travel regardless. The Court finds this would be improper. For example, some witnesses "would have to travel approximately half the distance to

attend trial"[20] if the case remains in the Eastern District of Texas, which is a factor that the Federal Circuit has considered in a § 1404 analysis. *See Genentech*, 566 F.3d at 1344, 1345.

In *Genentech*, the Federal Circuit discounted the inconvenience of witnesses that were traveling from Germany to either the Eastern District of Texas or the Northern District of California. *Id.* However, for witnesses that were traveling from San Diego, the Federal Circuit found that the additional travel inconvenience posed by the Eastern District of Texas weighed in favor of transfer. These San Diego witnesses would have had to travel hundreds of miles regardless of whether the case was tried in the Northern District of California or the Eastern District of Texas; yet, the Federal Circuit found that the extra travel inconvenience of the Eastern District of Texas weighed in favor of transfer because "at least some . . . employees and managers would have to travel approximately half the distance to attend trial in Northern District of California than in the Eastern District of Texas." *Id.*

The Court is mindful of the Federal Circuit's guidance not to give such witnesses "too much significance." *In re Apple*, 979 F.3d at 1343. However, that is no reason to completely discount the inconvenience to these individuals, as Under Armour would have the Court do. The Federal Circuit has cautioned against rigid application of the 100-mile rule, not its complete abrogation. There are two witnesses in this case who will have their travel distance doubled if the case is transferred and one who will have his travel distance quadrupled. Those facts should be considered under this factor.

On balance, this factor weighs in favor of transfer since there are seven witnesses in Maryland but none in this District. However, given the significant mitigating factors, including

---

[20] Moreover, transfer would nearly quadruple the travel distance for Bill Lichte.

significantly increasing travel for all of Athalonz's witnesses, this factor does not weigh significantly in favor of transfer.

### 4.      Practical Problems with Transfer

The parties agree that this factor is neutral. (Dkt. No. 17 at 12); (Dkt. No. 19 at 12.) The Court agrees that this factor is neutral.

### B.      Public Interest Factors

### 1.      The Administrative Difficulties Flowing from Court Congestion

Under Armour admits that this factor "weighs slightly against transfer" given that this District's time to trial is "several months faster than the time to trial in the District of Maryland." (Dkt. No. 17 at 14.) Athalonz concurs that this factor weighs against transfer. (Dkt. No. 19 at 15.) The Court agrees.

### 2.      Local Interests

Under Armour argues that the District of Maryland has a strong interest in hearing this case because the accused products were designed and developed in that District. (Dkt. No. 17 at 13.) As such, the decisions that led to the alleged infringement of the patents-in-suit were made in the District of Maryland. (*Id.*)

Athalonz argues that the local interest is neutral. Specifically, Athalonz argues that it is incorporated in Texas and has attempted to market and sell its products in Texas. Further, Athalonz argues that Texas has localized interest in the accused products, given that Mr. Spieth helped design, advertise, and market them in Texas.

The Court finds that this factor weighs in favor of transfer. Athalonz is incorporated in Texas and attempted to market and sell its products in Texas, but such is incomparable to the local interest in Maryland due to the location of the witnesses and location of the decisions leading to

infringement. *See In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *6 (Fed. Cir. Oct. 6, 2021). The Court finds that on balance this factor weighs in favor of transfer.

### 3.      Familiarity of the Forum with the Law that will Govern the Case

Under Armour argues that this factor is neutral. Athalonz argues that this factor weighs against transfer due to this Court's experience with patent cases. (Dkt. No. 19 at 15.) The Court Agrees with Under Armour. "Patent claims are governed by federal law, and as such both courts are capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008) (internal quotations omitted). This factor is neutral.

### 4.      Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law

The Court agrees with the parties that there are no issues concerning conflicts of law, and this factor is neutral. (Dkt. No. 17 at 15); (Dkt. No. 19 at 15.)

## IV.    CONCLUSION

The movant bears the burden to show that the alternative forum is "clearly more convenient" to prevail on a motion under Section 1404(a). *Volkswagen II*, 545 F.3d at 315. Although some factors here weigh in favor of transfer, there are significant mitigating facts in this case that weigh against transfer. The Court finds that Under Armour has not met its heightened burden in showing that the District of Maryland is "clearly more convenient."[21]

For the reasons stated herein, the Court **DENIES** Under Armour's Motion to Transfer this case to the District of Maryland (Dkt. No. 17.)

---

[21] It seems logical to the Court that the burden to be borne here is more akin to the clear and convincing standard rather than to the preponderance standard. Otherwise, the Fifth Circuit in *Volkswagen I* and *Volkswagen II* would have said simply "more convenient" and not "clearly more convenient."

So **ORDERED and SIGNED** this 20th day of December, 2023.


_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE