**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ATHALONZ, LLC, | § | |
| | § | Case No.: 2:23-cv-00193-JRG |
| *Plaintiff*, | § | |
| | § | **DEMAND FOR JURY TRIAL** |
| v. | § | |
| | § | |
| UNDER ARMOUR, INC., | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF**
**PHYSICAL SAMPLES AND SALES INFORMATION**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................... 2

A. UA Must Produce Physical Samples of the Accused Products. ............................. 2

B. UA Must Produce Additional Sales Information. .................................................. 4

III. CONCLUSION ........................................................................................................... 6

# I. INTRODUCTION

Plaintiff Athalonz, LLC ("Athalonz") moves to compel Defendant Under Armour, Inc. ("UA") to produce two narrow categories of information in dispute. Both categories are relevant and proportional to the needs of the case and UA has shown no burden in producing them.

***First***, Athalonz seeks production of physical samples of the Accused Products that are not available to purchase from UA itself. This patent infringement case is about UA's physical athletic shoes. In its infringement contentions, Athalonz relies on physical samples of UA shoes that it was previously able to acquire and analyze. However, analyzing the Accused Products involves cutting them apart and taking various photographs and measurements of heights and compressibility of materials. This causes irreversible, physical damage to the shoes. Because the products it previously analyzed cannot be reused, Athalonz needs a new sample of each Accused Product for purposes of expert discovery and further testing in this case. Some of the products can be still be purchased from UA's website, and Athalonz does not ask the Court to compel production of samples of these products. But many of the products are either out of stock or discontinued, and Athalonz therefore has no way of getting them. UA admits it has stock of the samples and has collected them for this litigation, but refuses to produce them in discovery for analysis. UA should not be permitted to withhold those samples, for which production will cause it no prejudice.

***Second***, Athalonz seeks production of sales information for additional UA products beyond the specific versions and models accused of infringement. Sales information for UA's non-accused products sold in the same market as the Accused Products is highly relevant to Athalonz's damages claims. It will show the price premium that the Accused Products garner in the market, which highlights the value of the patent claims and the benefits of the invention and is relevant to apportioning damages to the patented elements that are not present in non-infringing shoes. General information on UA's overall footwear sales is also relevant to damages, as it will show

the relative sales volumes of the Accused Products as compared to other UA footwear products. This type of information is directly relevant to the *Georgia-Pacific* factors and courts have ordered its production in other cases. UA has shown no burden of producing that information here.

## II. ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) permits discovery into "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The Court's Discovery Order (Dkt. 34) requires the parties to produce discovery without requests for production. "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *EVS Codec Techs., LLC v. OnePlus Tech. (Shenzhen) Co.*, 2020 WL 6365514, at *1 (E.D. Tex. Apr. 9, 2020).

In this case, Athalonz seeks two categories of information that are clearly within the permissible scope of discovery and which UA has shown no reason it cannot produce.

### A. UA Must Produce Physical Samples of the Accused Products.

Athalonz first moves to compel UA to provide physical samples of the Accused Products for Athalonz's analysis in this case. Athalonz has sought production of physical samples of the Accused Products since October 4, 2023. UA has dragged its feet on this issue for months. Eventually, UA finally confirmed it had collected physical samples of Accused Products that were not available on its website for Athalonz's inspection. Ex. 1 (UA 12/14/23 Letter). However, UA has since refused to provide these samples to Athalonz for analysis, and instead will apparently only let Athalonz look at the exterior of the shoes without performing testing to show infringement.

Analyzing the Accused Products involves cutting the shoes apart. *See* Dkt. 1 (Athalonz's complaint showing cut up shoes). Courts consider four factors in determining whether to permit

such destructive testing: "(1) whether the proposed testing is reasonable, necessary, and relevant to proving the movant's case; (2) whether the non-movant's ability to present evidence at trial will be hindered or prejudiced; (3) whether there are any less prejudicial alternatives to obtaining the evidence sought; and (4) whether there are adequate safeguards to minimize prejudice to the non-movant, particularly the non-movant's ability to present evidence at trial." *RevoLaze LLC v. J.C. Penney Corp.*, 2020 WL 1984322, at *1 (E.D. Tex. Apr. 27, 2020). Here, each of the four factors weigh in favor of production.

First, the testing is reasonable, necessary, and relevant to proving Athalonz's infringement claims. Athalonz's intends to rely on physical samples to show infringement at trial, and UA is on notice of how Athalonz intends to use the physical sample products based on its complaint and infringement contentions. Athalonz's expert should be permitted to rely on physical products to perform testing of the Accused Products in this case. There is no legitimate dispute that the physical products are relevant or reasonable, and production is necessary as set forth below.

Second, Athalonz's testing of the products will not hinder UA's ability to present evidence at trial. UA claims that the physical products are not necessary and that Athalonz should be able to rely on documents alone. Thus, UA can clearly rely on those same documents it thinks Athalonz can rely on. Further, there is no indication that the samples in UA's possession are the *only* samples that exist—UA likely has significant stock of the Accused Products and has not made any argument to the contrary. To the extent UA wants to present physical samples at trial, it cannot refuse to allow Athalonz the same opportunity, particularly where it will cause no prejudice to UA.

Third, there are no less prejudicial alternatives to this evidence. To the extent samples are otherwise available on UA's website, Athalonz has already agreed to purchase them at full retail price itself. But for samples that are no longer sold or are out of stock, the only way for Athalonz

to get these is through UA, or to go search the internet for potentially non-authentic samples sold by third-parties on websites like eBay. UA's claim that Athalonz should use documents instead of samples is meritless—UA does not get to dictate how Athalonz intends to prove its case at trial. The documents UA has produced in discovery do not clearly show the measurements or compressibility of materials that Athalonz has relied on to show infringement. Athalonz should not need to rely on vague references in documents when physical products are the best evidence.

Fourth, there is no need for further safeguards to preserve UA's ability to present evidence at trial. This is not a case where there is only one physical sample in existence such that Athalonz's destruction of it will affect UA. Instead, like in *RevoLaze*, "after [the] proposed testing," UA "will still have plenty of relevant [shoes] from which to conduct additional tests if it wishes to do so." *RevoLaze*, 2020 WL 1984322, at *3.

Prior to Athalonz filing this motion, UA cited *Anaya v. Tricam Indus., Inc.*, 2019 WL 5850554 (W.D. Tex. Sept. 19, 2019), for the proposition that destructive testing is inappropriate here. That case is nothing like this one. There, the case was about a manufacturing defect on a single, allegedly fault step stool, and Plaintiff wanted to perform destructive testing "on the central piece of evidence for the jury" that Defendants intended to rely on at trial. *Id.* at *2. Because of that, the court "weigh[ed] heavily the potential prejudice of removing from the jury the ability to see how the step stool looked when Plaintiff fell." *Id.* Here, there is no similar prejudice to UA from producing the relevant sample products in its possession, where it can procure additional products if it wants to perform its own testing.

**B. UA Must Produce Additional Sales Information.**

Athalonz has already moved to compel production of basic sales information for the Accused Products, which UA inexplicably did not produce on October 19, and even after Athalonz filed its motion to compel, has still not produced in full. That motion remains pending. Dkt. 41.

Beyond that basic sales information, Athalonz moves to compel additional sales information for UA's other footwear products, which is relevant to Athalonz's damages claims. Specifically, Athalonz seeks the same type of information it moved to compel on the Accused Products for the other shoes sold in the same markets: baseball, basketball, golf, training, and volleyball. Based on Athalonz's investigation, these other products are often very similar to the Accused Products, but do not infringe the Asserted Patents because they lack key elements of the claims. These non-infringing products appear to sell for much lower prices. For example, the Curry 11 basketball shoes (an Accused Product) retail for $160 on UA's website, while the Curry 3Z7 basketball shoes (not an Accused Product) retail for $85. https://www.underarmour.com/en-us/c/curry-brand-shoes-and-gear/shoes/. Athalonz seeks this discovery to understand the price premium for UA's infringing products over its non-infringing products, which will highlight the value of the patents and the benefits of the invention and relate to determining the correct royalty rate and apportionment factors in damages calculations. Cases have recognized that sales information for non-accused products can be relevant to determining the royalty rate used in the *Georgia-Pacific* analysis, which is what Athalonz intends to do here. *See, e.g., Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 WL 707914, at *4 (N.D. Cal. Feb. 26, 2013) (explaining sales information for non-accused products is relevant to at least Georgia-Pacific factors 6, 8, and 11). In addition, Athalonz seeks high-level sales information for UA's footwear products so it can understand what portion of those sales is made up of Accused Products. This discovery will highlight the relative sales volumes of the Accused Products to other products and show the popularity and importance of the patented technology to UA's market share.

UA claims no burden for producing either of these categories—a simple query in its database can produce the sales information requested here. Instead, UA's only argument is that the

information is not relevant. But Athalonz has directly explained how it intends to use the sales information, and UA does not refute it. Instead, it relies on easily distinguishable, non-binding, out-of-District cases denying different discovery requests that did not involve the same relevance arguments as Athalonz presents here. In *BASCOM Glob. Internet Servs., Inc. v. AT&T Corp.*, 2017 WL 11490077, at *2 (N.D. Tex. July 31, 2017), the court denied a request for all sales information for every AT&T customer because it was overly burdensome and irrelevant to convoyed sales. In *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 2014 WL 4593338, at *4 (N.D. Cal. Sept. 15, 2014), the court denied discovery into sales of every one of defendant's products because plaintiff had "not articulated a damages theory that would entitle it to broad discovery of sales and revenue data as to unaccused" products. In *Invensas Corp. v. Renesas Elecs. Corp.*, 2013 WL 12146531, at *2 (D. Del. May 8, 2013), the court denied discovery into sales of an "automotive" product line that plaintiff both failed to show existed or was relevant to its theory of convoyed sales. At bottom, none of UA's cases stand for a bright-line rule that non-accused sales product information is immune from discovery.

Here, because Athalonz has demonstrated why it needs this information and how it intends to use it, UA should be ordered to produce the sales information and can object to admissibility later if applicable. To the extent UA does not produce this information, it cannot rely on any such sales information or evidence related to it under Rule 37.

## III. CONCLUSION

For the reasons stated above, Athalonz respectfully requests that the Court grant its motion.

Dated: February 28, 2024

Respectfully submitted,

*/s/ Connor S. Houghton*

Taylor N. Mauze (TX Bar No. 24102161)
tmauze@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
901 S. Mopac Expressway
Bldg. 1, Ste. 300
Austin, TX 78756
Telephone: (650) 623-1401
Facsimile: (650) 650-3501

Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

Christine E. Lehman (pro hac vice)
clehman@reichmanjorgensen.com
Connor S. Houghton (pro hac vice)
choughton@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
1909 K Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 894-7310
Facsimile: (650) 560-3501

Michael Matulewicz-Crowley
mmatulewicz-
crowley@reichmanjorgensen.com
REICHMAN JORGENSEN LEHMAN
& FELDBERG LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
(332) 208-7170

***Attorneys for Plaintiff***
***Athalonz, LLC***

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service, including counsel for Under Armour, are being served on February 28, 2024 with a copy of this document via the Court's CM/ECF system.

*/s/ Melissa R. Smith*
Melissa R. Smith

**CERTIFICATE OF CONFERENCE**

On February 26, 2024, lead and local counsel for Athalonz spoke with lead and local counsel for Under Armour regarding the relief requested herein. Counsel for Under Armour indicated it opposed the relief requested.

*/s/ Melissa R. Smith*
Melissa R. Smith