IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ATHALONZ LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:23-CV-00193-JRG |
| | § | |
| UNDER ARMOUR, INC., | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Athalonz, LLC's ("Athalonz") Motion to Compel Compliance with Discovery Order (the "First Motion to Compel") (Dkt. No. 41) and Motion to Compel Production of Physical Samples and Sales Information (the "Second Motion to Compel") (Dkt. No. 50) (collectively, the "Motions"). In the Motions, Athalonz moves to compel Defendant Under Armour, Inc. ("UA") to produce nine categories of documents and items. Having considered the Motions, and the subsequent briefing the Court finds that the First Motion to Compel (Dkt. No. 41) should be **GRANTED-IN-PART** and **DENIED-IN-PART** and the Second Motion to Compel (Dkt. No. 50) should be **DENIED**. Athalonz's Motion for Oral Hearing on Plaintiff's Motion to Compel Compliance with Discovery Order (Dkt. No. 45) is **DENIED**.

I.   **BACKGROUND**

The Docket Control Order in this case sets the deadline for initial and additional disclosures (Paragraphs 1 and 3 of the Discovery Order) on October 19, 2023. (Dkt. No. 34 at 1-4; Dkt. No. 35 at 5.) Athalonz contends that UA failed to comply with its obligations under Paragraphs 1 and 3 of the Discovery Order by failing to produce relevant documents by October 19, 2023, and thus moves to compel the following seven categories of documents in its First Motion to Compel:

1. UA's sales information for the Accused Products;

2. Documents that identify any code name, internal name, project name, marketing name, or version number associated with the Accused Products;

3. Documents that identify the date the Accused Products were first sold in the United States, and the date they were discontinued, if applicable;

4. Internal specifications, business or marketing plans, promotional materials, development or testing documents for the Accused Products;

5. Documents related to Athalonz, its products, or its patents;

6. Contracts, draft agreements, and communications related to each athlete's role as a sponsor of the Accused Products, including documents sufficient to show the amount and terms of payment from Under Armour to each athlete; and

7. Documents related to each athlete's involvement in the design, development, testing, marketing, advertising, promotion, and/or sale of the Accused Products.

Athalonz also moves for its fees and expenses in filing this motion under Federal Rule of Civil Procedure 37(a)(5)(A).

In its response, UA claims that it already agreed to produce most of the documents requested by Athalonz, and that Athalonz's only complaint was the timing in which such production was performed. (*See* Dkt. No. 44.) However, UA represents that it produced more documents since Athalonz filed its First Motion to Compel, allegedly mooting most of the issues. (*Id.*) Nonetheless, Athalonz moved for a hearing on the First Motion to Compel a few days after UA filed its response. (Dkt. No. 45.)

Subsequently, Athalonz filed its Second Motion to Compel seeking production of two more categories of documents:

8. Physical samples of the Accused Products that are not available to purchase from UA itself for the purposes of destructive testing; and

9. Additional sales information relating to unaccused UA products sold in the same markets as the Accused Products.

2

In the Second Motion to Compel, Athalonz hinted that UA's productions following the First Motion to Compel did not render the motion moot. (Dkt. No. 50 at 4.) ("Athalonz has already moved to compel production of basic sales information for the Accused Products, which UA inexplicably did not produce on October 19, and even after Athalonz filed its motion to compel, has still not produced in full. That motion remains pending.")

In light of the parties' conflicting positions as to what issues had and had not been resolved, the Court scheduled a telephonic status conference originally set for April 23, 2024. (Dkt. No. 52.) However, shortly after scheduling the telephonic status conference, the parties of their own volition filed a Joint Report on Pending Discovery Motions (the "Joint Report"). (Dkt. No. 53.) The Joint Report confirmed that the parties agreed that UA's productions mooted Athalonz's request for categories 1–4, and the Court need not order UA to produce any documents related to those topics. (*Id.* at 1.) The parties also clarified what documents had been produced since the filing of the Motions. Given the parties Joint Notice, the Court finds that a status conference is no longer necessary and that all remaining issues can be resolved on the papers.

## II. DISCUSSION

Between the two Motions, Athalonz moves for production of nine categories of documents and moves for its fees and costs on the First Motion to Compel. The Court addresses each in turn.

### A. Documents Already Produced (Categories 1–4)

In the Joint Report, the parties confirm that the Court need not order UA to produce any documents related to categories 1–4 as such documents have already been produced. (Dkt. No. 53.) Accordingly, UA's First Motion to Compel with respect to categories 1–4 is **DENIED AS MOOT** pursuant to the agreement of the parties in the Joint Report.

### B.     Documents Related to Athalonz, its products, or its patents (Category 5)

Athalonz argues that UA has not sufficiently produced "Documents related to Athalonz, its products, or its patents." (Dkt. No. 41 at 4-5.) Athalonz devotes virtually no substantive argument to this category of documents in its original motion. (*See id.*) However, in the Joint Report, Athalonz argues that "UA has produced no standalone documents and less than 100 emails with attachments in this category, all of which are dated in 2022 or later." (Dkt. No. 53 at 1-2.) Athalonz disputes whether UA has performed a reasonable search for these documents and contends that this issue is still ripe. (*Id.*)

UA contends that it has produced all responsive documents within its possession and that any other documents that might have been responsive have been destroyed pursuant to UA's Electronic Communications Retention Policy and Record Management Policy. (*Id.*) UA also notes that its initial communications with Athalonz took place over ten years ago and the employees involved (Kevin Culley and Don Gibadlo) are no longer employed by UA. (*Id.*) UA contends that these communications and any documents involved in these communications would have been destroyed pursuant to its document retention policy. (*Id.*) UA argues that it has produced all relevant documents in its possession on this topic, and it has no more responsive documents to produce.

In the Joint Report, Athalonz concedes that UA did in fact produce relevant documents pertaining to this category, and it only disputes whether UA performed a reasonable search. However, the Court is not persuaded from Athalonz's First Motion to Compel or the Joint Report that UA is withholding any relevant documents. The Court is not persuaded that UA's search was deficient, especially in light of UA's explanation that the events at issue occurred over ten years ago and any documents would have been destroyed due to UA's document retention policy. Accordingly, and acknowledging the documents already produced, this request is **DENIED**.

C.      UA's Sponsored Athlete Documents (Categories 6–7)

Athalonz moves to compel "targeted discovery related to UA's athletes that sponsor the Accused Products." (Dkt. No. 41 at 5.) Specifically, Athalonz moves to compel production of UA's contracts with its sponsored athletes and production of documents and communications relating to the athletes' roles in designing the Accused Products. (*Id.* at 5.) Athalonz anticipates that these contracts will demonstrate the amount UA pays its sponsored athletes to market and promote the Accused Products and may also potentially rebut arguments from UA that the Accused Products are only successful because they are sponsored by professional athletes, and not because they incorporate Athalonz's technology. (*Id.*)

UA argues that it is willing to produce relevant documents relating to its sponsored athletes, *i.e.*, documents related to the athletes' involvement in the design, development, or testing of the shape and materials of the sole. (Dkt. No. 44 at 3-5.) However, UA argues that its athlete contracts are not relevant and that Athalonz is not entitled to any documents beyond those pertaining to the athletes' involvement in designing the soles of the shoes, since the Asserted Patents repeatedly describe the sole design and sole materials as the inventive features. (*Id.*)

Athalonz argues that the contracts with the sponsored athletes are relevant at least to damages. (Dkt. No. 41 at 5-6.) Further, Athalonz argues that UA's limitation on the scope of Athalonz's request is improper since the Asserted Claims are not limited to the sole design and sole materials, but rather cover the entire shoe. (*Id.* at 6.)

The Court agrees with Athalonz. The Court finds that UA's contracts with its sponsored athletes are relevant at least to the issue of damages and the value of the accused technology. Further, the design documents—pertaining to the entire shoe—are relevant. UA does not dispute that the design documents are relevant, just that production of such should be limited to documents describing the athletes' involvement in the design of the sole of the accused shoes. However, the

Asserted Claims are not limited to the design and materials of the sole, but rather cover the entire shoe. Accordingly, the Court finds that UA's unilateral limitation on the scope of this request is improper.

The Court finds that Athalonz's First Motion to Compel should be **GRANTED** with respect to the sponsored athletes' contracts and documents pertaining to the athletes' involvement in the design of the whole shoe (Categories 6-7).

### D.   Accused Product Physical Samples (Category 8)

Athalonz moves to compel physical samples of certain Accused Products for the purposes of performing destructive testing. (Dkt. No. 50 at 2-4.) According to Athalonz, analyzing the Accused Products involves cutting them apart and taking various photographs and measurements of heights and compressibility of materials, which causes irreversible, physical damage to the shoes. Athalonz has been able to obtain some Accused Products directly from UA. (*Id.* at 1.) However, Athalonz contends that it has not been able to obtain certain products that are either out of stock on UA's website or are discontinued. (*Id.*)

UA argues that this request should be denied for a number of reasons. First, UA claims that all of the requested shoes are available through other online retailers, including eBay.com, goat.com, stockx.com and stadiumgoods.com, each of which guarantees the authenticity of the goods being sold. (Dkt. No. 51 at 3-4.) Second, UA argues that Athalonz already has possession of half of the requested shoes and cannot show why additional samples are necessary. (*Id.*) Third, UA argues that less prejudicial alternatives exist to destructive testing. UA contends that it has already produced CAD files and detailed 3D renderings of all the Accused Products, and Athalonz may use such and the samples already in its possession instead of performing destructive testing. (*Id.* at 5.) UA argues that destructive testing is prejudicial because UA has a limited quantity of its

6

discontinued and out of stock shoes, and for some models it has only been able to locate a single unit after reasonable search. (*Id.*)

The Court agrees with UA. Athalonz is not entitled to destructive testing as a matter of right, and in this case there are less prejudicial alternatives to destructive testing of the samples sought by Athalonz from UA. Athalonz is already in possession of some samples of the Accused Products for destructive testing, and destructive testing of the samples sought by Athalonz is prejudicial to UA given the limited quantity of those products in UA's possession. The Court finds the production of the CAD files and 3D renderings to be an acceptable alternative to production of the samples that have not been produced by UA. Further, to the extent that Athalonz is not content to use the samples already in its possession or the CAD files, Athalonz may seek the samples sought from online retailers that stock the Accused Products and certify their authenticity.

Accordingly, the Second Motion to Compel with respect to the production of physical samples for the purposes of destructive testing should be **DENIED**.

E.     **Additional Sales Information for Non-Accused Products (Category 9)**

Athalonz moves to compel UA to produce "basic sales information" for non-accused products. Specifically, Athalonz requests "the same type of information" that it requests in Category 1, but for UA's other footwear products sold in the same markets: baseball, basketball, golf, training, and volleyball. (Dkt. No. 50 at 5.) Athalonz seeks this discovery to understand the price premium for UA's Accused Products over its non-accused products, which Athalonz argues may highlight the value of the patents. Athalonz contends such is relevant to damages and the calculation of a reasonable royalty.

UA argues that its sales information for non-accused products is irrelevant. UA contends that information related to unaccused products is not discoverable except in cases where the unaccused products are convoyed or derivative sales associated with the products accused. (Dkt.

7

No. 51 at 6-7) (collecting cases). UA argues that Athalonz does not seek sales data related to convoyed or derivative sales, but instead seeks sales data for shoes that are in no way related to the Accused Products. According to UA, the non-accused shoes at issue are not sold contemporaneously with the accused shoes, are not accessories of the accused shoes, nor are they functionally related to the accused shoes.

The Court agrees with Athalonz that none of UA's cases stand for a bright-line rule that unaccused product sales information is immune from discovery. (Dkt. No. 50 at 6.) The Court is not persuaded that sales data for unaccused products is only relevant when such data pertains to a convoyed or derivative sales theory, as UA contends. For example, in some circumstances, narrowly tailored sales data of unaccused products could be relevant under *Georgia-Pacific* factor eight—"[t]he established profitability of the product made under the patent; its commercial success; and its current popularity"—factor nine—"[t]he utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results"—or factor eleven—"[t]he extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." *See Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971).

Nonetheless, at a bare minimum, requests for production must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Though Athalonz articulates how it intends to use the sales data, its request is untethered to the Accused Products in this case, except for the market in which the products are sold. Athalonz asks for all sales data on all of UA's baseball, basketball, golf, training, and volleyball shoes regardless of whether such items are contemporaneously sold with the Accused Products, are older versions of the Accused Products, are items that compete with the

Accused Products, or are even similar in appearance and function to the Accused Products. Athalonz bears the burden to not only show that the discovery sought is relevant, but that it is proportional to the needs of the case.

The Court is persuaded that the sales data of unaccused products may be relevant to damages in some circumstances. However, Athalonz's request, as articulated in its motion, is too broad. The Court finds that the request pertaining to the sales information of the unaccused products should be **DENIED WITHOUT PREJUDICE**. The Court finds that it would be beneficial for the parties to meet and confer concerning this topic in an attempt to come to an agreement on how best to reasonably limit such a request for production. Barring an agreement by the parties, Athalonz may resubmit its motion with respect to this specific topic within thirty (30) days of this Order. Given their combined knowledge, the Parties are likely better positioned to resolved "proportionality." However, should they fail to do so in a manner that resolves this issue, the Court will take it up if a subsequent request becomes necessary.

F.     **Athalonz's Motion for its Fees and Costs**

Athalonz argues that it is entitled to its fees and costs for the First Motion to Compel under Federal Rule of Civil Procedure 37(a)(5)(A) because "UA unilaterally and unapologetically ignored the Court's October 19[, 2023] deadline to produce documents, despite agreeing that most of what Athalonz requested was relevant." (Dkt. No. 41 at 7.)

The Court finds that Athalonz is not entitled to its fees and costs. The October 19, 2023 deadline sets the date for initial disclosures, but the deadline to substantially complete discovery is not until August 17, 2024. Athalonz filed its First Motion to Compel ten months prior to the deadline for the close of fact discovery seeking to compel *immediate* production of documents that UA had already agreed to produce and did in fact produce shortly thereafter, as confirmed in the Joint Report. Athalonz is not entitled to fees and costs on such a motion.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the First Motion to Compel (Dkt. No. 41) should be and hereby is **GRANTED-IN-PART** and **DENIED-IN-PART** and the Second Motion to Compel (Dkt. No. 50) should be and hereby is **DENIED**. Accordingly, it is **ORDERED** that UA shall promptly produce the following:

- Contracts, draft agreements, and communications related to each athlete's role as a sponsor of the Accused Products, including documents sufficient to show the amount and terms of payment from Under Armour to each athlete; and

- Documents related to each athlete's involvement in the design, development, testing, marketing, advertising, promotion, and/or sale of the Accused Products.

It is further **ORDERED** that the parties are to rigorously **meet and confer** concerning Athalonz's request for additional sales information for non-accused products (Category 9). Barring resolution by the parties, Athalonz may resubmit its motion with respect to Category 9 within thirty (30) days of the issuance of this Order, and as part of which Athalonz shall clearly specify both the purposes for which discovery is sought and the bounds by which it limits its request.

**So ORDERED and SIGNED this 22nd day of April, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE